UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| AMANDA M. GAGNON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CASE NO. 1:15-cv-_____ |
| | ) | |
| GRAHAM BEHAVIORAL | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S COMPLAINT & JURY TRIAL DEMAND**
**INJUNCTIVE RELIEF REQUESTED**

Plaintiff Amanda M. Gagnon ("Gagnon") was employed by Defendant Graham Behavioral Services, Inc. ("Defendant GBSI"), beginning on or about June 4, 2012. Gagnon was abruptly terminated from said employment with Defendant GBSI on or about September 10, 2013. In conjunction with said termination, and as a result of Defendant GBSI's actions and omissions further described herein, Gagnon brings this action for, *inter alia*: 1) Count I: Family Medical Leave Act Violations (Retaliation);  2) Count II: Family Medical Leave Act Violations (Interference); 3) Count III: Maine Family Medical Leave Requirements Act Violations (Retaliation); 4) Count IV: Maine Family Medical Leave Requirements Act Violations (Interference); 5) Count V: Maine Whistleblowers' Protection Act Violations, 6) Count VI: Maine Human Rights Act Violations (Retaliation); 7) Count VII: Maine Human Rights Act Violations (Associational Disability Discrimination); 8) Americans with Disabilities Act Violations (Associational Disability Discrimination); 9) Count IX: Rehabilitation Act Violations (Associational Disability Discrimination); and, 10) Count X: Equitable Relief/Restitution.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Amanda M. Gagnon ("Gagnon") is a natural person residing in the Town of Sidney, Kennebec County, State of Maine.

2.      Upon information and belief, Defendant Graham Behavioral Services, Inc. ("Defendant GBSI") is a corporation organized under the laws of the State of Maine.

3.      Upon information and belief, based upon the 2014 Annual Report for Defendant GBSI filed with the Maine Department of the Secretary of State, Bureau of Corporations, Elections, and Commissions:

        a.      Carol E. Graham ("Carol Graham") is indicated as the President of Defendant GBSI;

        b.      Carol E. Graham ("Carol Graham") is indicated as the Treasurer of Defendant GBSI;

        c.      Tom Cookson is indicated as the Vice President of Defendant GBSI; and/or,

        d.      Carol Graham is indicated as one of the Shareholders of Defendant GBSI.

4.      Upon information and belief, Defendant GBSI operates its business, in part, in the City of Augusta, Kennebec County, State of Maine.

5.      Upon information and belief, Defendant GBSI had fifteen (15) or more employees working for it during the time period in which Gagnon worked for it.

6.      Upon information and belief, at all times relevant to this case Defendant GBSI received federal funding in connection with its provision of service including but not limited to Medicaid funds.

7.      On or about March 27, 2015, the Maine Human Rights Commission ("MHRC") issued its "Right to Sue" letter, pursuant to 5 M.R.S.A. § 4612, *et seq.* and on March 30, 2015 the Equal Employment Opportunity Commission ("EEOC") issued its "Notice of Right to Sue".

8.      Gagnon has exhausted all her administrative remedies.

9.      This Court has subject matter jurisdiction over Plaintiff's federal and state claims pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

## FACTS

10.      On or about June 4, 2012, Gagnon was hired by Defendant GBSI.

11.      More specifically, when Gagnon was hired by Defendant GBSI, as indicated above, she was hired as a representative payee ("Representative Payee").

12.      One of Gagnon's supervisors at Defendant GBSI, once she began working for Defendant GBSI, was Michelle Boucher ("Boucher").

13.      It was Gagnon's belief that after a few months, she was able to perform the job tasks associated with being a Representative Payee.

14.      During all times relevant herein, Gagnon had a son ("Son").

15.      More specifically, Son has autism.

16.      Upon information and belief, Son's autism is a disability as defined by the Maine Human Rights Act ("MHRA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("Rehab Act").

17.      Once Gagnon became employed by Defendant GBSI, she made Defendant GBSI aware of the fact that Son had autism.

18.      During Gagnon's initial year of employment with Defendant GBSI, she had to take intermittent leave on more than one occasion to take care of Son.

19.      For example, the leave being described in Paragraph 18, *supra.,* on more than one occasion, was due to the fact that the behavioral health care professional assigned to care and provide treatment for Son was unable to do so.

20.     During Gagnon's initial year of employment with Defendant GBSI, she received more than one warning related to her attendance at work.

21.     Many of the warnings, described in Paragraph 20, *supra.*, were due to the fact that Son needed Gagnon to care for him.

22.     When Gagnon was disciplined, as indicated above, Gagnon explained to Defendant GBSI that many of her absences from work were due to the fact that she needed to care for Son as a result of his autism.

23.     Even though Gagnon told Defendant GBSI about the reasons for many of her absences, as indicated above, Defendant GBSI disciplined her anyway.

24.     In or about May 2013, Gagnon needed to take leave from Defendant GBSI to care for Son ("May Leave").

25.     As a result of the May Leave, Boucher attempted to discipline Gagnon in connection with her absence from work at Defendant GBSI ("Attempted Leave Discipline").

26.     It was Gagnon's belief that the Attempted Leave Discipline by Defendant GBSI's agent, Boucher, was illegal in nature.

27.     As a result of Gagnon's belief described in Paragraph 26, *supra.*, she reported her concerns to Defendant GBSI by talking to Carol Graham.

28.     It was Gagnon's belief that the report she made to Defendant GBSI, as indicated in Paragraph 27, *supra.*, was legally protected for purposes of the Maine Whistleblowers' Protection Act, Family Medical Leave Act ("FMLA"), and Maine Family Medical Leave Requirements Act ("FMLR") .

29.     It was Gagnon's understanding that as a result of the report she made to Defendant GBSI, via Carol Graham, Carol Graham told Boucher that Gagnon could not be disciplined for taking leave from work to take care of Son.

30.     After the events described above, it was Gagnon's belief that Boucher began to treat her in a retaliatory manner.

31.     More specifically, the retaliatory manner described in Paragraph 30, *supra.* was demonstrated by some of the following:

>  a.     by Boucher avoiding Gagnon;
>
>  b.     by Boucher not speaking to Gagnon on a daily basis; and/or,
>
>  c.     other things that might be identified during the course of discovery and/or proven at trial.

32.     On or about June 4, 2013, Gagnon requested intermittent medical leave, pursuant to the FMLA and FMLR to care for her Son ("FMLA Leave").

33.     Gagnon's FMLA Leave was approved by Defendant GBSI on or about June 4, 2013.

34.     On or about June 6, 2013, Gagnon received her employee performance review for (upon information and belief) the time period of June 4, 2012 through June 4, 2013 ("Employee Performance Review").

35.     Gagnon received on her Employee Performance Review a score of good for the following:

>  a.     job knowledge; and/or,
>
>  b.     initiative.

36.     Gagnon received on her Employee Performance Review a score of very good for the following:

      a.      work quality; and/or,

      b.      communication/listening skills.

37.    Although Gagnon's score for attendance/punctuality on her Employee Performance Review was lower than her scores indicated above,, the Employee Performance Review indicated (for her attendance/punctuality) that:

      a.      the issue had been addressed;

      b.      that Gagnon was working on being aware of appointments and finding alternative child care for sick children; and/or,

      c.      other things that might be identified during the course of discovery and/or proven at trial.

38.    The Employee Performance Review indicated, *inter alia*, that Gagnon:

      a.      learns quickly;

      b.      responds well to suggestions/retraining; and/or,

      c.      other things that might be identified during the course of discovery and/or proven at trial.

39.    After Gagnon's FMLA Leave was approved, as indicated above, Gagnon utilized intermittent medical leave on more than one occasion.

40.    On or about September 6, 2013, Gagnon took legally protected, and approved, medical leave to care for her Son.

41.    On or about September 10, 2013, Boucher had a meeting ("Termination Meeting") with Gagnon once Gagnon had returned from her medical leave, as indicated above.

42.    During the Termination Meeting, Boucher indicated to Gagnon, among other things, the following:

      a.      that Gagnon's desk was very clean;

     b.     that because Gagnon's desk was so clean, Boucher began to wonder what Gagnon was doing while at work;

     c.     that Gagnon's work was being accomplished by Gagnon;

     d.     that Boucher had a problem with Gagnon's attendance over the past few months; and/or,

     e.     other things that might be identified during the course of discovery and/or proven at trial.

43.     In response to Boucher's comments during the Termination Meeting, as indicated above, Gagnon told Boucher:

     a.     she was getting her work accomplished;

     b.     her desk being clean was a good thing; and/or,

     c.     other things that might be identified during the course of discovery and/or proven at trial.

44.     During the Termination Meeting, Boucher eventually told Gagnon that Gagnon's employment with Defendant GBSI was being terminated.

45.     During the Termination Meeting, Boucher provided Gagnon with a disciplinary action form ("Discipline Form").

46.     The Discipline Form provided by Defendant GBSI to Gagnon during the Termination Meeting indicated (expressly and/or implicitly), among other things, that:

     a.     Gagnon's supervisor had recently noticed Gagnon spending excessive time on personal business while not on breaks;

     b.     Gagnon was always on her cell phone;

     c.     Gagnon was no longer a good fit with Defendant GBSI due to excessive performance issues and poor attendance;

     d.     other things that might be identified during the course of discovery and/or proven at trial.

47.    Defendant GBSI was aware that Son had a disability and/or regarded Son as a person with a disability and record of disability.

48.    Upon information and belief, Defendant GBSI allowed other employees to take intermittent leave without consequences for issues that were unrelated to caring for a family member with a disability.

49.    Defendant GBSI's explanations for Gagnon's termination are:

     a.     untrue;

     b.     evidences a pretextual effort on the part of Defendant GBSI to subterfuge the true facts in order to cover up its unlawful discrimination; and/or,

     c.     other things that may be identified during the course of discovery and/or proven at trial.

50.    As a result of Defendant GBSI's actions and omissions described herein, Defendant GBSI unlawfully discriminated against Gagnon with malice and/or reckless indifference to Gagnon's protected rights.

51.    Defendant GBSI's conduct constitutes knowing and willful violations of Gagnon's rights.

52.    As a result of Defendant GBSI's actions and omissions described herein, Gagnon has been damaged.

## COUNT I: FAMILY MEDICAL LEAVE ACT VIOLATIONS
### (RETALIATION)
### 29 U.S.C.A. § 2601 ET SEQ.

53.     Gagnon repeats and realleges each and every factual allegation set forth in Paragraphs 1 through 52, *supra.,* with the same force and effect as if fully set forth verbatim herein.

54.     Gagnon was an employee as contemplated by the Family Medical Leave Act.

55.     Defendant GBSI is an employer as contemplated by the Family Medical Leave Act.

56.     While Gagnon was employed by Defendant GBSI, Gagnon's Son began to experience a serious health condition.

57.     The serious health condition experienced by Gagnon's Son, previously described herein, required Gagnon's Son to receive:

> a.     more than one consultation with a medical provider; and,
>
> b.     an ongoing treatment regimen for a condition.

58.     As previously discussed herein, Gagnon has documentation relating to her Son's need for medical treatment.

59.     Gagnon had a reasonable belief that she was legally entitled to take a leave of absence from work due to the medical condition of her Son so she could take care of Son.

60.     As previously discussed herein, Gagnon notified Defendant GBSI about her Son's medical condition and the fact that Gagnon had to miss work to care for her Son.

61.     Once Gagnon was able to return to work, she attempted to do so.

62.     Gagnon's attempt to return to work was denied by Defendant GBSI.

63.     Even though Gagnon was able to return to work once Gagnon's need for medical leave was over, she was denied coming back to work by Defendant GBSI.

64.     Defendant GBSI's actions and/or omissions previously described herein did any one of the following adverse employment actions:

      a.    discharged, suspended, disciplined, and/or otherwise discriminated against Gagnon for exercising her rights under the Family Medical Leave Act; and/or,

      b.    discharged, suspended, disciplined, and/or otherwise discriminated against Gagnon for opposing a practice that is unlawful under the Family Medical Leave Act.

65.     While Gagnon was employed by Defendant GBSI, she took medical leave that was protected under the Family Medical Leave Act.

66.     After being disciplined for using leave to care for her Son's Autism, Gagnon reported to Defendant GBSI that she believed that the discipline in question was unlawful.

67.     Gagnon reasonably believed that the discipline for her use of leave was unlawful.

68.     Defendant GBSI retaliated against Gagnon for using protected leave.

69.     Defendant GBSI retaliated against Gagnon for opposing what she reasonably believed to be a violation of the Family Medical Leave Act.

70.     There is a causal connection between Gagnon's protected activity and the adverse employment action.

71.     Defendant GBSI violated the Family Medical Leave Act as a result of its actions and/or omissions previously described herein.

72.     As a direct and proximate result of Defendant GBSI's violations of the Family Medical Leave Act, Gagnon incurred damages.

73.    By virtue of the foregoing, Defendant GBSI is liable to Gagnon in an amount to be determined, plus punitive damages, interest and costs, including reasonable attorneys' fees to the fullest extent permissible and such other and further relief to which Gagnon is entitled.

### COUNT II: FAMILY MEDICAL LEAVE ACT VIOLATIONS
### (INTERFERENCE)
### 29 U.S.C.A. § 2601 ET SEQ.

74.    Gagnon repeats and realleges each and every factual allegation set forth in Paragraphs 1 through 73, *supra.,* with the same force and effect as if fully set forth verbatim herein.

75.    Gagnon was an employee as contemplated by the Family Medical Leave Act who was eligible for the rights and protections associated with the Family Medical Leave Act.

76.    Defendant GBSI is an employer as contemplated by the Family Medical Leave Act.

77.    While Gagnon was employed by Defendant GBSI, Gagnon's Son began to experience a serious health condition.

78.    The serious health condition experienced by Gagnon's Son, previously described herein, required Gagnon's Son to receive:

        a.    more than one consultation with a medical provider; and,

        b.    an ongoing treatment regimen for a condition.

79.    Gagnon has documentation relating to her Son's need for medical treatment.

80.    Gagnon had a reasonable belief that she was entitled to take a leave of absence from work due to the medical condition of her Son so she could take care of Son.

81.    As previously discussed herein, Gagnon notified Defendant GBSI about her Son's medical condition and the fact that Gagnon had to miss work to care for her Son.

82.    Once Gagnon was able to return to work, she did so.

83.    Gagnon's request to return to work was denied by Defendant GBSI.

84.    Even though Gagnon was able to return to work once Gagnon's need for medical leave was over, she was denied coming back to work by Defendant GBSI.

85.    Defendant GBSI's actions and/or omissions previously described herein did any one of the following adverse employment actions:

a.    interfered with Gagnon's exercise and/or attempted exercise of her rights under the Family Medical Leave Act;

b.    restrained Gagnon's exercise and/or attempted exercise of her rights under the Family Medical Leave Act; and/or,

c.    denied Gagnon's exercise and/or attempted exercise of her rights under the Family Medical Leave Act.

86.    While Gagnon was employed by Defendant GBSI, she took medical leave that was protected under the Family Medical Leave Act.

87.    Defendant GBSI unlawfully considered Gagnon's protected leave under the Family Medical Leave Act as a negative factor.

88.    Defendant GBSI violated the Family Medical Leave Act as a result of its actions and/or omissions previously described herein.

89.    As a direct and proximate result of Defendant GBSI's violations of the Family Medical Leave Act, Gagnon incurred damages.

90.    By virtue of the foregoing, Defendant GBSI is liable to Gagnon in an amount to be determined, plus punitive damages, interest and costs, including reasonable attorneys' fees to the fullest extent permissible and such other and further relief to which Gagnon is entitled.

## COUNT III: MAINE FAMILY MEDICAL LEAVE
## REQUIREMENTS VIOLATIONS
## (RETALIATION)
## 27 M.R.S.A. § 843, ET SEQ.

91.     Gagnon repeats and realleges each and every factual allegation set forth in Paragraphs 1 through 90, *supra.,* with the same force and effect as if fully set forth verbatim herein.

92.     Gagnon was an employee as contemplated by the Maine Family Medical Leave Requirements.

93.     Defendant GBSI is an employer as contemplated by the Maine Family Medical Leave Requirements.

94.     While Gagnon was employed by Defendant GBSI, Gagnon's Son began to experience a serious health condition.

95.     The serious health condition experienced by Gagnon's Son, previously described herein, required Gagnon's Son to receive:

    a.     more than one consultation with a medical provider; and,

    b.     an ongoing treatment regimen for a condition.

96.     As previously discussed herein, Gagnon has documentation relating to her Son's need for medical treatment.

97.     Gagnon had a reasonable belief that she was legally entitled to take a leave of absence from work due to the medical condition of her Son.

98.     As previously discussed herein, Gagnon notified Defendant GBSI about her Son's medical condition and the fact that Gagnon had to miss work to care for her Son.

99.     Once Gagnon was able to return to work, she attempted to do so.

100.     Gagnon's attempt to return to work was denied by Defendant GBSI.

101.    Even though Gagnon was able to return to work once Gagnon's need for medical leave was over, she was denied coming back to work by Defendant GBSI.

102.    Defendant GBSI's actions and/or omissions previously described herein did any one of the following adverse employment actions:

        a.     discharged, suspended, disciplined, and/or otherwise discriminated against Gagnon for exercising her rights under the Maine Family Medical Leave Requirements; and/or,

        b.     discharged, suspended, disciplined, and/or otherwise discriminated against Gagnon for opposing a practice that is unlawful under the Maine Family Medical Leave Requirements.

103.    While Gagnon was employed by Defendant GBSI, she took medical leave that was protected under the Maine Family Medical Leave Requirements. After being disciplined for using leave to care for her Son's Autism, Gagnon reported to Defendant GBSI that she believed that the discipline in question was unlawful.

104.    Gagnon reasonably believed that the discipline for her use of leave was unlawful.

105.    Defendant GBSI retaliated against Gagnon for using protected leave.

106.    Defendant GBSI retaliated against Gagnon for opposing what she reasonably believed to be a violation of the Maine Family Medical Leave Requirements.

107.    There is a causal connection between Gagnon's protected activity and the adverse employment action.

108.    Defendant GBSI violated the Maine Family Medical Leave Requirements as a result of its actions and/or omissions previously described herein.

109.    As a direct and proximate result of Defendant GBSI's violations of the Maine Family Medical Leave Requirements, Gagnon incurred damages.

110.     By virtue of the foregoing, Defendant GBSI is liable to Gagnon in an amount to be determined, plus punitive damages, interest and costs, including reasonable attorneys' fees to the fullest extent permissible and such other and further relief to which Gagnon is entitled.

### COUNT IV: MAINE FAMILY MEDICAL LEAVE REQUIREMENTS VIOLATIONS (INTERFERENCE) 26 M.R.S.A. § 843, ET SEQ.

111.     Gagnon repeats and realleges each and every factual allegation set forth in Paragraphs 1 through 110, *supra.,* with the same force and effect as if fully set forth verbatim herein.

112.     Gagnon was an employee as contemplated by the Maine Family Medical Leave Requirements who was eligible for the rights and protections associated with the Maine Family Medical Leave Requirements.

113.     Defendant GBSI is an employer as contemplated by the Maine Family Medical Leave Requirements.

114.     While Gagnon was employed by Defendant GBSI, Gagnon's Son began to experience a serious health condition.

115.     The serious health condition experienced by Gagnon's Son, previously described herein, required Gagnon's Son to receive:

        a.     more than one consultation with a medical provider; and,

        b.     an ongoing treatment regimen for a condition.

116.     Gagnon has documentation relating to her Son's need for medical treatment.

117.     Gagnon had a reasonable belief that she was entitled to take a leave of absence from work due to the medical condition of her Son.

118.    As previously discussed herein, Gagnon notified Defendant GBSI about her Son's medical condition and the fact that Gagnon had to miss work to care for her Son.

119.    Once Gagnon was able to return to work, she did so.

120.    Gagnon's request to return to work was denied by Defendant GBSI.

121.    Even though Gagnon was able to return to work once Gagnon's need for medical leave was over, she was denied coming back to work by Defendant GBSI.

122.    Defendant GBSI's actions and/or omissions previously described herein did any one of the following adverse employment actions:

      a.    interfered with Gagnon's exercise and/or attempted exercise of her rights under the Maine Family Medical Leave Requirements;

      b.    restrained Gagnon's exercise and/or attempted exercise of her rights under the Maine Family Medical Leave Requirements; and/or,

      c.    denied Gagnon's exercise and/or attempted exercise of her rights under the Maine Family Medical Leave Requirements.

123.    While Gagnon was employed by Defendant GBSI, she took medical leave that was protected under the Maine Family Medical Leave Requirements.

124.    Defendant GBSI unlawfully considered Gagnon's protected leave under the Maine Family Medical Leave Requirements as a negative factor.

125.    Defendant GBSI violated the Maine Family Medical Leave Requirements as a result of its actions and/or omissions previously described herein.

126.    As a direct and proximate result of Defendant GBSI's violations of the Maine Family Medical Leave Requirements, Gagnon incurred damages.

127.    By virtue of the foregoing, Defendant GBSI is liable to Gagnon in an amount to be determined, plus punitive damages, interest and costs, including reasonable attorneys' fees to the fullest extent permissible and such other and further relief to which Gagnon is entitled.

## COUNT V: MAINE WHISTLEBLOWERS' PROTECTION ACT
## VIOLATIONS, 26 M.R.S.A. § 833

128.    Gagnon repeats and realleges each and every factual allegation set forth in Paragraphs 1 through 127, *supra.,* with the same force and effect as if fully set forth verbatim herein.

129.    As previously described herein, Gagnon:

      a.     in good faith reported to Defendant GBSI what she reasonably believed to be a violation of a law or rule adopted under the laws of Maine, a political subdivision of Maine, and/or of the United States; and/or,

      b.     opposed practices she reasonably believed to be illegal in nature.

130.    Gagnon engaged in activity protected by the Maine Whistleblowers' Protection Act.

131.    Gagnon's actions previously described herein were done in good faith.

132.    Gagnon's belief about the acts previously described herein was reasonable.

133.    Defendant GBSI took an adverse employment action against Gagnon, once she made her good faith reports to it as previously described herein.

134.    There is a causal connection between Gagnon's protected activity and the adverse employment action.

135.    As a direct and proximate result of Defendant GBSI's violation of the Maine Whistleblowers' Protection Act and/or Maine Human Rights Act, Gagnon incurred damages, including but not limited to lost wages.

136.    Defendant GBSI intentionally violated the Maine Whistleblowers' Protection Act and/or Maine Human Rights Act with malice and/or with reckless disregard for Gagnon's rights.

137.    By virtue of the foregoing, Defendant GBSI is liable to Gagnon in an amount to be determined, plus compensatory damages, punitive damages, interest and costs, including

reasonable attorneys' fees to the fullest extent permissible and such other and further relief to which Gagnon is entitled.

## COUNT VI: MAINE HUMAN RIGHTS ACT VIOLATIONS
### (RETALIATION)
### 5 M.R.S.A. § 4551, ET SEQ.

138.   Gagnon repeats and realleges each and every factual allegation set forth in Paragraphs 1 through 137, *supra.,* with the same force and effect as if fully set forth verbatim herein.

139.   Gagnon was an employee as contemplated by the Maine Human Rights Act.

140.   Defendant GBSI is an employer as contemplated by the Maine Human Rights Act.

141.   While Gagnon was employed by Defendant GBSI, she was afforded the protections of the Maine Human Rights Act, including those protections afforded by the Maine Whistleblowers' Protection Act.

142.   After being disciplined for using leave to care for her Son's Autism, Gagnon reported to Defendant GBSI that she believed that the discipline in question was unlawful.

143.   Gagnon reasonably believed that the discipline for her use of leave was unlawful.

144.   Defendant GBSI retaliated against Gagnon for using protected leave.

145.   Defendant GBSI retaliated against Gagnon for opposing what she reasonably believed to be a violation of the Maine Whistleblowers' Protection Act.

146.   There is a causal connection between Gagnon's protected activity and the adverse employment action.

147.   Gagnon was subject to an adverse employment action as previously described herein.

148.     There is a causal connection between Gagnon's protected activity and the adverse employment action.

149.     Defendant GBSI violated the Maine Human Rights Act by terminating Gagnon's employment because she engaged in an activity protected by the Maine Whistleblowers' Protection Act and/or the Maine Human Rights Act.

150.     As a direct and proximate result of Defendant GBSI's violations of the Maine Human Rights Act, Gagnon incurred damages.

151.     Defendant GBSI intentionally violated the Maine Human Rights Act with malice and/or reckless disregard for Gagnon's rights.

152.     By virtue of the foregoing, Defendant GBSI is liable to Gagnon in an amount to be determined, plus punitive damages, interest and costs, including reasonable attorneys' fees to the fullest extent permissible and such other and further relief to which Gagnon is entitled.

### COUNT VII: MAINE HUMAN RIGHTS ACT VIOLATIONS
### (ASSOCIATIONAL DISABILITY DISCRIMINATION)
### 5 M.R.S.A. § 4551, ET SEQ.

153.     Gagnon repeats and realleges each and every factual allegation set forth in Paragraphs 1 through 152, *supra.,* with the same force and effect as if fully set forth verbatim herein.

154.     Gagnon was an employee as contemplated by the Maine Human Rights Act.

155.     Defendant GBSI is an employer as contemplated by the Maine Human Rights Act.

156.     While Gagnon was employed by Defendant GBSI, she was afforded the protections of the Maine Human Rights Act.

157.   While Gagnon was employed by Defendant GBSI, she was qualified for the job that she was performing for Defendant GBSI.

158.   While Gagnon was employed by Defendant GBSI, her Son had a record of a disability as defined by the Maine Human Rights Act.

159.   Gagnon's Son's disability, as previously described herein, is a disability as defined and/or contemplated under the Maine Human Rights Act, particularly when viewed without mitigating measures.

160.   Gagnon's Son's disability, as previously described herein:

   a.   significantly impaired his health as compared to what is ordinarily experienced in the general population;

   b.   substantially limited major life activities including but not limited to working when viewed without mitigating measures;

   c.   substantially limited the operation of major bodily functions; and/or,

   d.   other things that may be identified during the course of discovery and/or proven at trial.

161.   Defendant GBSI regarded Gagnon's Son as disabled, as defined and/or contemplated by the Maine Human Rights Act.

162.   As a result of Gagnon's termination from Defendant GBSI, Gagnon was subject to an adverse employment action.

163.   Gagnon's adverse employment action occurred under circumstances raising a reasonable inference that the disability of her Son was a determining factor in Defendant GBSI's decision to terminate Gagnon.

164.   As a result of Defendant GBSI's actions and omissions described herein, Gagnon was subjected to unlawful employment discrimination as a result being associated with a relative with a disability.

165.   By virtue of the foregoing, Defendant GBSI is liable to Gagnon in an amount to be determined, plus punitive damages, interest and costs, including reasonable attorneys' fees to the fullest extent permissible and such other and further relief to which Gagnon is entitled.

## COUNT VIII: AMERICANS WITH DISABILITIES ACT VIOLATIONS
## 42 U.S.C. § 12203, ET SEQ.
## (ASSOCIATIONAL DISABILITY DISCRIMINATION)

166.   Gagnon repeats and realleges each and every factual allegation set forth in Paragraphs 1 through 165, *supra.,* with the same force and effect as if fully set forth verbatim herein.

167.   Gagnon was an employee as contemplated by the Americans with Disabilities Act.

168.   Defendant GBSI is an employer as contemplated by the Americans with Disabilities Act.

169.   While Gagnon was employed by Defendant GBSI, she was afforded the protections of the Americans with Disabilities Act.

170.   While Gagnon was employed by Defendant GBSI, she was qualified for the job that she was performing for Defendant GBSI.

171.   While Gagnon was employed by Defendant GBSI, her Son had a record of a disability as defined by the Americans with Disabilities Act.

172.   Gagnon's Son's disability, as previously described herein, is a disability as defined and/or contemplated under the Americans with Disabilities Act, particularly when viewed without mitigating measures.

173.   Gagnon's Son's disability, as previously described herein:

      a.   significantly impaired his health as compared to what is ordinarily experienced in the general population;

b.      substantially limited major life activities including but not limited to working when viewed without mitigating measures;

c.      substantially limited the operation of major bodily functions; and/or,

d.      other things that may be identified during the course of discovery and/or proven at trial.

174.    Defendant GBSI regarded Gagnon's Son as disabled, as defined and/or contemplated by the Americans with Disabilities Act.

175.    As a result of Gagnon's termination from Defendant GBSI, Gagnon was subject to an adverse employment action.

176.    Gagnon's adverse employment action occurred under circumstances raising a reasonable inference that the disability of her Son was a determining factor in Defendant GBSI's decision to terminate Gagnon.

177.    As a result of Defendant GBSI's actions and omissions described herein, Gagnon was subjected to unlawful employment discrimination as a result being associated with a relative with a disability.

178.    By virtue of the foregoing, Defendant GBSI is liable to Gagnon in an amount to be determined, plus punitive damages, interest and costs, including reasonable attorneys' fees to the fullest extent permissible and such other and further relief to which Gagnon is entitled.

### COUNT IX: REHABILITATION ACT VIOLATIONS
### 29 U.S.C. §§ 701, ET SEQ.
### (ASSOCIATIONAL DISABILITY DISCRIMINATION)

179.    Gagnon repeats and realleges each and every factual allegation set forth in Paragraphs 1 through 178, *supra.,* with the same force and effect as if fully set forth verbatim herein.

180.    Gagnon was an employee as contemplated by the Rehabilitation Act.

181.    Defendant GBSI is an employer as contemplated by the Rehabilitation Act.

182.    While Gagnon was employed by Defendant GBSI, she was afforded the protections of the Rehabilitation Act.

183.    While Gagnon was employed by Defendant GBSI, she was qualified for the job that she was performing for Defendant GBSI.

184.    While Gagnon was employed by Defendant GBSI, her Son had a record of a disability as defined by the Americans with Disabilities Act.

185.    Gagnon's Son's disability, as previously described herein, is a disability as defined and/or contemplated under the Rehabilitation Act, particularly when viewed without mitigating measures.

186.    Gagnon's Son's disability, as previously described herein:

    a.    significantly impaired his health as compared to what is ordinarily experienced in the general population;

    b.    substantially limited major life activities including but not limited to working when viewed without mitigating measures;

    c.    substantially limited the operation of major bodily functions; and/or,

    d.    other things that may be identified during the course of discovery and/or proven at trial.

187.    Defendant GBSI regarded Gagnon's Son as disabled, as defined and/or contemplated by the Rehabilitation Act.

188.    As a result of Gagnon's termination from Defendant GBSI, Gagnon was subject to an adverse employment action.

189.    Gagnon's adverse employment action occurred under circumstances raising a reasonable inference that the disability of her Son was a determining factor in Defendant GBSI's decision to terminate Gagnon.

190.    As a result of Defendant GBSI's actions and omissions described herein, Gagnon was subjected to unlawful employment discrimination as a result being associated with a relative with a disability.

191.    By virtue of the foregoing, Defendant GBSI is liable to Gagnon in an amount to be determined, interest and costs, including reasonable attorneys' fees to the fullest extent permissible and such other and further relief to which Gagnon is entitled.

## COUNT X: EQUITABLE RELIEF/RESTITUTION
### 14 M.R.S.A. § 6051

192.    Gagnon repeats and realleges each and every factual allegation set forth in Paragraphs 1 through 191, *supra.,* with the same force and effect as if fully set forth verbatim herein.

193.    Gagnon pleads Equitable Relief/Restitution in the alternative to the other counts contained herein.

194.    As a result of Defendant GBSI's actions and omissions described herein, Gagnon has sustained damages.

195.    Defendant GBSI should not be permitted to profit by its actions and omissions described herein because for every wrong there is a remedy.

196.    This Court has full equity jurisdiction where there is not a plain, adequate, and complete remedy at law, pursuant to 14 M.R.S.A. § 6051.

197.    By virtue of the foregoing, this Court should invoke its equitable jurisdiction and find Defendant GBSI liable to Gagnon in an amount to be determined, plus interest and costs, including reasonable attorneys' fees, and for such other and further relief to which Gagnon is entitled.

## RELIEF SOUGHT

**WHEREFORE**, Gagnon demands judgment against Defendant GBSI as follows:

1.      With respect to Count I for Family Medical Leave Requirements Violations (Retaliation), that the Court enter judgment against Defendant GBSI and award Gagnon an amount to be determined, together with interest, costs, and, if appropriate, attorneys' fees, and injunctive relief;

2.      With respect to Count II for Family Medical Leave Requirements Violations (Interference), that the Court enter judgment against Defendant GBSI and award Gagnon an amount to be determined, together with interest, costs, and, if appropriate, attorneys' fees, and injunctive relief;

3.      With respect to Count III for Maine Family Medical Leave Requirements Violations (Retaliation), that the Court enter judgment against Defendant GBSI and award Gagnon an amount to be determined, together with interest, costs, and, if appropriate, attorneys' fees, and injunctive relief;

4.      With respect to Count IV for Maine Family Medical Leave Requirements Violations (Interference), that the Court enter judgment against Defendant GBSI and award Gagnon an amount to be determined, together with interest, costs, and, if appropriate, attorneys' fees, and injunctive relief;

5.      With respect to Count V for Maine Whistleblowers' Protection Act Violations, that the Court enter judgment against Defendant GBSI and award Gagnon an amount to be determined, together with interest, costs, and, if appropriate, attorneys' fees, and injunctive relief;

6.     With respect to Count VI for Maine Human Rights Act Violations (Retaliation), that the Court enter judgment against Defendant GBSI and award Gagnon an amount to be determined, together with interest, costs, and, if appropriate, attorneys' fees, and injunctive relief;

7.     With respect to Count VII for Maine Human Rights Act Violations (Associational Disability Discrimination), that the Court enter judgment against Defendant GBSI and award Gagnon an amount to be determined, together with interest, costs, and, if appropriate, attorneys' fees, and injunctive relief;

8.     With respect to Count VIII for Americans with Disabilities Act Violations (Associational Disability Discrimination), that the Court enter judgment against Defendant GBSI and award Gagnon an amount to be determined, together with interest, costs, and, if appropriate, attorneys' fees, and injunctive relief;

9.     With respect to Count IX for Rehabilitation Act Violations (Associational Disability Discrimination), that the Court enter judgment against Defendant GBSI and award Gagnon an amount to be determined, together with interest, costs, and, if appropriate, attorneys' fees, and injunctive relief;

10.     With respect to Count X for Equitable Relief/Restitution, that the Court enter judgment against Defendant GBSI and award Gagnon an amount to be determined, together with interest, costs, and, if appropriate, attorneys' fees, and injunctive relief;

11.     Require Defendant GBSI to employ/reinstate Gagnon, or alternatively, award Gagnon back pay and/or front pay and/or lost wages benefits;

12.     That the Court award Gagnon actual, compensatory, punitive, nominal, civil penal, general, liquidated, and/or special damages according to proof;

26

13.     Permanently enjoin Defendant GBSI from engaging in any employment practice which discriminates on the basis of an employee's engagement in protected activity under the Maine Family Medical Leave Requirements, Maine Human Rights Act, Americans with Disabilities Act, Rehabilitation Act and/or Family Medical Leave Act;

14.     Require Defendant GBSI's president and/or chief executive officer and/or owner to mail a letter to all of its employees notifying them of the verdict against them and stating it will not tolerate discrimination or retaliation in the future;

15.     Require Defendant GBSI to post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

16.     Require Defendant GBSI to train all management level employees about the illegality of discrimination and retaliation against employees in connection with engaging in activity protected by the Maine Family Medical Leave Requirements, Maine Human Rights Act, Americans with Disabilities Act, Rehabilitation Act and/or Family Medical Leave Act;

17.     Require Defendant GBSI to place a document in Gagnon's personnel file explaining why it terminated Gagnon and otherwise discriminated against Gagnon for an activity protected by the Maine Family Medical Leave Requirements, Maine Human Rights Act, Americans with Disabilities Act, Rehabilitation Act and/or Family Medical Leave Act;

18.     To hold Carol Graham individually liable, to the extent permissible, in the event that it is determined that Defendant GBSI is not able to satisfy any judgment awarded to Gagnon, so as to prevent an unjust and/or inequitable result; and/or,

19.     That the Court award Gagnon such other and further relief as it deems appropriate under the circumstances.

SIGNATURE ON NEXT PAGE

27

Dated: April 1, 2015                        Respectfully submitted,
                                            Amanda M. Gagnon
                                            By her attorneys,


                                            /s/ Chad T. Hansen
                                            /s/ Jeffrey A. Schwartz
                                            Chad T. Hansen, Esq., Bar No. 9489
                                            Jeffrey A. Schwartz, Esq., Bar No. 9983
                                            MAINE EMPLOYEE RIGHTS GROUP
                                            92 Exchange Street, Second Floor
                                            Portland, Maine 04101
                                            207.874.0909 <Tel.>
                                            207.874.0343 <Fax>